Commonwealth *v.* Weldon et al., Appellants.

Argued March 11, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*A. S. Oliensis*, with him *Paul A. Kunkel*, for appellants.

*E. LeRoy Keen*, Assistant District Attorney, with him *Carl B. Shelley*, District Attorney, for appellee.

OPINION BY HIRT, J., July 19, 1946:

Appellants Wolfe and Robert Rosenberg, members of the bar of Dauphin County, were convicted, in general verdicts, with Val. E. Weldon on two indictments and were sentenced. Their conviction induced an order of the court disbarring them from further practice of law. Because of the severity of this punishment in removing them from their profession they were paroled for the concurrent period of the jail sentences imposed. Although they assign the refusal of a new trial, they did not press the question at the argument of these appeals. Nevertheless we have reviewed the entire record and can find no errors which would justify the grant of new trials. The remaining assignments question the refusal of the court to arrest the judgments, for intrinsic causes appearing on the face of the record. Appellants argue that the indictments are bad and that their motion to quash should have been sustained.

These appellants, with Weldon were charged in one indictment with conspiracy "to do certain dishonest, malicious and unlawful acts to the prejudice of the Mar-

ket Street Trust Company . . . to wit: to fraudulently take, convert and apply to the use of the said Wolfe Rosenberg and Robert Rosenberg, the sum of $3,203.21, the money and property of the said Market Street Trust Company, to make and cause to be made by the said Val E. Weldon certain false entries in the books, reports and accounts of the said Market Street Trust Company, contrary to the form of the Act of the General Assembly in such case made and provided . . ." The other indictment charged that the three defendants, "Weldon being then and there a bookkeeper, employee and agent of the Market Street Trust Company, . . . did wilfully, knowingly and feloniously take, convert and apply to the use of one, Wolfe Rosenberg, and one, Robert Rosenberg, the sum of $3,203.21, money and property of the said Market Street Trust Company . . ." A second count charged that "Wolfe Rosenberg and Robert Rosenberg, before the commission of the said felony by the said Val E. Weldon, with intent as aforesaid, wilfully, knowingly and feloniously did incite, abet, move, procure, help, aid, counsel, hire and command the said Val E. Weldon . . . to wilfully, knowingly and feloniously take, convert and apply to the use of one, Wolfe Rosenberg, and one, Robert Rosenberg, the sum of $3,203.21, money and property of the said Market Street Trust Company . . ." The amount of money laid in the indictments was amended to $3,023.21.

Evidence given on the trial does not become a part of the record in considering the propriety of an order refusing arrest of judgment. *Com. v. Heller*, 147 Pa. Superior Ct. 68, 75, 24 A. 2d 460. But some reference may be made to the facts—and they are all undisputed—to demonstrate that in these indictments appellants had ample notice of the charges they were called upon to meet.

Weldon was the head bookkeeper of the Market Street Trust Company, in sole charge of the individual or demand ledgers of depositor accounts. Appellants, in their

partnership practice in Harrisburg, maintained an active account at that bank. The ledger account of their deposits and withdrawals were in the exclusive control of Weldon. Their account was frequently overdrawn. Beginning May 1, 1943, appellants induced Weldon to withhold, each day, the posting of checks paid by the bank for which there were insufficient funds. These checks, so withheld, then were surrendered to appellants by Weldon in exchange for their undated check payable to cash, in the total amount paid by the bank that day and not charged to their account. Later, whenever appellants' account showed a sufficient balance, Weldon dated such of the substituted checks, as would not overdraw the account, and put them through the bank, charging them to appellants' ledger account. Between May 1 and October 25, 1943, Weldon at all times held appellants' checks payable to cash which if posted would have overdrawn their account. At the end of the period the total of appellants' checks so held by him was $3,023.21. For his service to appellants, Weldon received from them $5 each day (including his vacation period) between May 1 and October 25, 1943. In the meantime Weldon's ledgers were continually out of balance with the general books of the bank. Apprehensive of a visit by a bank examiner, Weldon selected two inactive accounts of other depositors and fictitiously charged their accounts on his ledger with amounts which, together, equalled the shortage, thus forcing a balance of his books with the general bank ledger. The fraud was brought to light when one of the accounts so charged, became active. Within a week after its discovery appellants, with some small financial help from Weldon's father, made good the entire loss. Later, on ascertaining the facts, the Banking Commissioner ordered these prosecutions. Appellants' defense on the facts was that they did not intend to defraud the bank.

Appellants argue that the first indictment charges an executed conspiracy. It does not, although the proofs

establish its execution. And it is their contention that it is duplicitous in that it charges two distinct offenses (*Hutchison v. Com.*, 82 Pa. 472) and further that it is bad in that it fails to set forth the means by which the conspiracy was executed. We do not so regard the indictment.

The gist of the offense is the unlawful confederation and, in general, no overt act need be set forth in an indictment, and none need be proved to sustain a charge of conspiracy. *Com. v. Mezick*, 147 Pa. Superior Ct. 410, 24 A. 2d 762. Since the conspiracy is the crime, and acts, committed pursuant to it are but evidence of, and in aggravation of the offense (*Commonwealth v. Gormley*, 77 Pa. Superior Ct. 298, 301) there is little distinction in good pleading between indictments for conspiracy, whether executed or not. And even where an executed conspiracy is charged, though it is proper to set forth the means by which the unlawful purpose was accomplished (*Com. v. Williams and Breese*, 102 Pa. Superior Ct. 216, 222, 156 A. 711) it is not essential to a good indictment that the means of accomplishment be laid. The dicta of the early cases, to the contrary, have not been followed.

The indictment was drawn under §302 of the Penal Code of June 24, 1939, P. L. 872, 18 PS 4302, and the language of the indictment is that of the statute. The offense, as defined, is conspiracy, confined to two or more persons who conspire and agree either *to* defraud another of his property *or* "do any other dishonest, malicious or unlawful act to the prejudice of another . . ." It is true that either the charge of conspiracy, to defraud the bank of the funds, *or* to cause false entries to be made in its books, would have been sufficient under the statute. But it is no objection to this indictment that it contains both averments. By its statutory language it meets the test of sufficiency set up by §11 of the Act of March 31, 1860, P. L. 427, 19 PS 261. Moreover, since a *single conspiracy* is laid, the charge of false book entries is but an

averment of one of the means intended by the conspirators in their plan to defraud the bank of its money. Conspiracy to obtain money was the charge; under the scheme adopted, it hardly could have been accomplished unless Weldon kept his ledgers in apparent balance. Thus appellants' contentions are somewhat inconsistent: they complain of duplicity and the very averment of the indictment, which they attack, supplied them with notice, which they say they were entitled to, of one means of accomplishing their unlawful agreement. Since the Commonwealth was within its right to lay the means, it cannot be charged with duplicity, merely because a means in contemplation was an act of such character that the agreement to commit it, alone, would have supported a conspiracy indictment. Appellants in this indictment were informed of what they had to meet, with sufficient certainty to protect them against a second charge on any of the phases of the single conspiracy laid in the indictment. They are in no position to complain.

The second indictment was drawn under §827 of the Penal Code of June 24, 1939, P. L. 872, 18 PS 4827, which makes it a felony for any "employee" of a bank, fraudulently to apply "to his own use, or the use of any other person, any of the money or other property of such bank". The offense, by its definition, is directed against unlawful conversion by one with the status of an employee. The charge is an indictment of Weldon as a principal. But the fact that appellants had no relation to the bank, except as depositors, did not prevent the Commonwealth from indicting them as principals also, for their fraudulent acts stamped them principals, though in the second degree. The general rule is thus stated by Clark and Marshall in Law of Crimes, p. 257, §191: "Any person who is capable of committing a crime may be guilty as a principal in the second degree or accessory before or after the fact; and it can make no difference that, by reason of age, sex, condition, or class, he or she is incompetent to commit the particular crime

as principal in the first degree." Weldon's employment by the bank was essential both as to averment and proof. Section 1105 of the Penal Code, 18 PS 5105, provides: "Every principal in the second degree or accessory before the fact, to any felony at the common law or under any act of Assembly may be indicted, tried, convicted, and if no punishment is provided, may be punished in all respects as if he were the principal felon". On the facts, the distinction between principals in the second degree and accessories may be fine. Cf. *State v. Hamilton*, 13 Nev. 386, 1 Wharton's Criminal Law, §257. But their unlawful acts are in a single class in contemplation of §1105. An accessory may be charged as principal, *Brandt v. Com.*, 94 Pa. 290, as may a principal in the second degree, regardless of whether the illegal act of the principal in the first degree amounted to a felony because of his status—in the present case, as an employee of the bank. Cf. *Com. v. Wm. Strauss*, 89 Pa. Superior Ct. 82, 87.

The second count charges appellants as accessories. While this count may be surplusage, there can be no legal objection to it. One may be charged in an indictment both as principal and accessory to the same felony. *Com. v. Bradley*, 16 Pa. Superior Ct. 561, 565; *Com. v. Mendola*, 294 Pa. 353, 357, 144 A. 292. Referring to this principle the lower court by SHEELY, P. J., specially presiding said: "There is no objection to the fact that the Rosenbergs are charged in the first count as principals and in the second count as accessories. As pointed out above, they may be both, and under the statute the indictment is the same whether they are the one, or the other, or both. In Commonwealth v. Russell, 149 Pa. Superior Ct. 326, 328 (1942), the first and second counts of the indictment charged the defendant as an accessory and the third and fourth counts charged him as principal, under Section 1105 of the Penal Code. The Superior Court said: 'These counts were added, no doubt, out of extra caution . . . They were in accord with the provi-

sions of the said statutes and furnished no ground for either quashing the indictment or arresting the judgment' ".

We find no intrinsic defect in the indictments in these cases and nothing to justify arresting the judgment.

Judgments affirmed.